[L. A. No. 18140. In Bank. Apr. 21, 1942.]

WILLIAM J. BRUNTON, as City Council Member, etc., et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Irving M. Smith, City Attorney (Long Beach), and Roy J. Brown and Frank C. Charvat, Deputies City Attorney, for Petitioners.

J. H. O'Connor, County Counsel, W. B. McKesson, Deputy County Counsel, and George H. Emerson for Respondent.

TRAYNOR, J.—The Los Angeles County Flood Control District owns certain real property in the channel of the Los Angeles River located in the harbor district of the city of Long Beach. In 1939 the Flood Control District entered into an agreement with the Continental Corporation giving the latter the right to operate oil wells upon the property. Certain ordinances of the city of Long Beach prohibited the operation of oil wells within this area, and the officials of the city refused to issue permits or to allow the operation of oil wells on the Flood Control District's property. The Flood Control District and the Continental Corporation thereupon brought an action against the city of Long Beach and certain of its officers to enjoin the enforcement of all ordinances affecting the right of plaintiffs to drill for oil. The trial court held that those ordinances entirely prohibiting plaintiffs from drilling for oil upon the land in question were unreasonable and discriminatory and therefore invalid.

Ordinance C-1549 as amended by C-1739 and ordinance H. D. 22 as amended by H. D. 38 required each person drilling for oil in the harbor district of Long Beach to obtain a permit from the board of harbor commissioners and to pay that board a seven hundred and fifty dollar "Investigation and Permit Fee" and a one hundred and fifty dollar "Annual Permit Renewal and Inspection Fee" each fiscal year thereafter. The trial court found that these fees were imposed "for revenue as well as for regulation," that any application for such a permit is made by the Flood Control District "through its officers acting in their official capacities," and that the fees are payable "for the performance of official services of the officers named in said ordinances." It concluded that the plaintiffs were entitled to obtain such permits "without the payment of any of the fees prescribed by said ordinances" and enjoined defendants from "enforcing, seeking, or threatening to enforce: . . . the provisions relating to the payment of fees . . . in . . . ordinance H. D. number 22 as amended by ordinance H. D. number 38, and ordinance C-1549 as amended by ordinance C-1739." No appeal was taken from this judgment, and it has become final. In compliance with the injunction, permits were issued to the Flood Control District without payment of the fees required by the ordinances.

In June, 1940, the city council of Long Beach passed ordinance C-1815 and ordinance C-1814, which by its terms pur-

ported to amend ordinance C-1549. At the same time the board of harbor commissioners passed ordinance H. D. 55, which purported to amend ordinance H. D. 22. These ordinances required the payment of license fees to the city clerk of Long Beach by each person operating an oil well at any place within the city of Long Beach. They eliminated the previous requirement for the payment of fees to the board of harbor commissioners by persons operating oil wells within the harbor district of Long Beach and substituted for that requirement the duty to pay to the city clerk the uniform fees prescribed for the operation of wells throughout the city.

In January, 1941, after the enactment of the new ordinances, the Continental Corporation, on its own behalf and as agent for the Los Angeles County Flood Control District, applied to the city clerk of Long Beach and to the board of harbor commissioners for a permit to operate an oil well on the property owned by the Flood Control District. Neither application was accompanied by the fees prescribed in the new ordinances, and, on the advice of the city attorney of Long Beach, the board of harbor commissioners and the city clerk refused to issue the permits. The Continental Corporation, acting through its vice president, thereupon filed in the superior court an affidavit of contempt setting forth the judgment in the injunction proceeding, the passage of the amendatory ordinances, the application for the permit, and the intentional refusal of the defendants to issue the permit without the payment of fees. The court held that the members of the city council, the members of the board of harbor commissioners, the city clerk, the city attorney, and the deputy city attorney had violated the injunction and were therefore guilty of contempt. Defendants have petitioned for a writ of certiorari to annul the order of the trial court holding them guilty of contempt.

The jurisdiction of a lower court to issue a final judgment of contempt may be reviewed on petition for a writ of certiorari. (See cases cited in 5 Cal. Jur. 955.) It is settled that the question whether the acts complained of can constitute a contempt is a jurisdictional one for the purposes of such review. (*Mattos* v. *Superior Court,* 30 Cal. App. (2d) 641 [86 P. (2d) 1056] ; *Jones* v. *Superior Court,* 88 Cal. App. 253 [262 Pac. 1098]. See *Times Mirror Co.* v. *Superior Court,* 15 Cal. (2d) 99 [98 P. (2d) 1029] ; and cases cited in 5 Cal. Jur. 918.) In the present case there is no dispute as

to the facts. The question is whether the trial court could justifiably hold the petitioners guilty of contempt on the basis of their acts as alleged in the affidavit of contempt and as shown by the evidence. If these acts were not sufficient to constitute a contempt, the judgment cannot stand.

To hold a person guilty of contempt for violating an injunction, the acts constituting the contempt must be clearly and specifically prohibited by the terms of the injunction. (*Mattos* v. *Superior Court, supra,* at 649 and cases there cited; *American Foundry & Mfg. Co.* v. *Josam Mfg. Co.,* 79 F. (2d) 116, 118; *City of Campbell* v. *Arkansas-Missouri Power Co.,* 65 F. (2d) 425, 427-428.) The party bound by an injunction must be able to determine from its terms what he may and may not do; he cannot be held guilty of contempt for violating an injunction that is uncertain or ambiguous (Ibid.), just as he may not be held guilty of violating a criminal statute that fails to give him adequate notice of the prohibited acts. (See cases cited in 7 Cal. Jur. 843.)

In the present case, therefore, the petitioners are guilty of contempt only if the acts complained of were clearly prohibited by the terms of the injunction. These acts consisted of a refusal to issue to plaintiffs a permit for the operation of an oil well without payment of the fees prescribed by the new ordinances. Respondents contend that petitioners were enjoined from attempting to collect any fees from respondents for the operation of oil wells. The injunction by its terms, however, enjoins petitioners only from attempting to collect from respondents those fees required by the old ordinances, H. D. 22 as amended by H. D. 38 and C-1549 as amended by C-1739. The findings of fact and conclusions of law do not indicate that the injunction was any broader in scope. The pertinent conclusion of law simply states that plaintiffs "are entitled to have issued any permits required by ordinances number C-1549, as amended by C-1739, H. D. number 22 as amended by H. D. number 38 . . . without the payment of any of the fees prescribed by said ordinances." The findings of fact state: "That ordinance H. D. number 22, as amended by ordinance H. D. number 38, and ordinance number C-1549, as amended by ordinance number C-1739, require applicants as defined in said ordinances to pay the fees therein provided for the issuance of the permits described in said ordinances; that the amounts paid for said fees are imposed by said city under said ordinances for revenue as well as for regulation;

that if any permit is applied for by the plaintiff Los Angeles County Flood Control District under any of said ordinances for any operations to be carried on under the provisions of the drilling and operating agreement which is attached to plaintiffs' Amended and Supplemental Complaint and marked Exhibit A, said District makes such application through its officers acting in their official capacity, and the fees prescribed by said ordinances are payable for the performance of official services of the officers named in said ordinances.''

. Respondents contend that these findings constitute a holding by the court that all fees of this type are prohibited by section 4295 of the Political Code, which provides: ''State, county and township officers shall not perform any official services unless upon the payment of such fees as are prescribed by law for the performance of such services, except . . . in the following cases: . . . (2) . . . neither the state nor any county, city and county, city, district, or other political subdivision, nor any public officer, or board or body, acting in his or its official capacity on behalf of the state, or any county, city and county, city, district or other political subdivision, shall be required to pay or deposit any fee for the filing of any document or paper, or for the performance of any official service.'' This section is concerned with fees paid to state, county, and township officers and does not expressly apply to fees paid to officers of cities. There is no clear and specific statement to indicate to petitioners that the court based its decision upon this section or that the injunction was intended to prohibit the charging of any such fees under any ordinance rather than just those provided for by the old ordinances.

Respondents contend that the statement in the foregoing findings that the fees were imposed by the city ''for revenue as well as regulation'' indicates the court was of the opinion that under article XIII, section 1 of the California Constitution no fees for revenue purposes can be imposed by one political subdivision upon another. This section provides that all property shall be taxed in proportion to its value and ''that property . . . such as may belong to the United States, this state, or to any county, city and county, or municipal corporation within this state shall be exempt from taxation . . .'' If the fee required by the ordinances under consideration is a tax, however, it is not a tax upon the value of the property owned by the Flood Control District but a tax

upon the privilege of drilling for oil. It is settled that a privilege tax is not a property tax within the meaning of this and other sections of the Constitution. (*Ingels* v. *Riley*, 5 Cal. (2d) 154 [53 P. (2d) 939, 103 A. L. R. 1] ; *Aircraft Co. Inc.* v. *Johnson*, 13 Cal. (2d) 545 [90 P. (2d) 572] ; *Kaiser Land & Fruit Co.* v. *Curry*, 155 Cal. 638, 650-654 [103 Pac. 841] ; *Los Angeles* v. *Los Angeles etc. Co.*, 152 Cal. 765, 767 [93 Pac. 1006] ; *McAdams Oil Co.* v. *Los Angeles*, 32 Cal. App. (2d) 359 [89 P. (2d) 729] ; *Roth Drug, Inc.* v. *Johnson*, 13 Cal. App. (2d) 720 [57 P. (2d) 1022] ; See cases cited in note, 103 A. L. R. 35 et seq.) If the lower court was of the opinion that this constitutional provision prohibited all fees in the nature of the ones in question, it failed to give any indication sufficient to charge petitioners with notice that the injunction extended to all such fees rather than just those required by the ·old ordinances.

It is thus clear that the injunction enjoined petitioners from collecting from plaintiffs only those fees required by the old ordinances. Petitioners, however, could not evade the injunction by the subterfuge of enacting new ordinances that did not materially differ from the old ones. (*Perry* v. *Kinnear*, 42 Ill. 160, 162-3; *Ray* v. *Parish of Rapides*, 170 La. 644 [128 So. 663] ; see cases cited in 32 C. J. 493-4, § 860.) . Their attempt to collect fees under the new ordinances would constitute contempt of court if the new ordinances were not substantially different from the old. A comparison of the old ordinances with the new, however, reveals the following material differences: (1) The new ordinances require license fees for oil operations anywhere in the city of Long Beach whereas the old ordinances were effective only in the harbor district of the city. Thus, the old ordinances were discriminatory while the new ones are uniform in operation. (2) Under the new ordinances the fees are payable to the city clerk and become part of the general funds of the city, whereas under the old ordinances the fees were paid to the board of harbor commissioners and become part of the harbor revenue fund. Since the general funds of the city enable it to furnish services such as police and fire protection, street maintenance, building inspection, and health and sanitary facilities, the fees paid under the new ordinances are used to furnish special services for the benefit of those to whom the permits are issued, whereas under the old ordinances the fees collected could be expended only by the board of harbor commissioners exclusively for harbor purposes.

In view of the material differences between the new ordinances and the old, petitioners cannot be held guilty of violating an injunction that prohibited them from attempting to collect the fees required by the old ordinances. The validity of the new ordinances is not now before this court. Plaintiffs are free to test their validity by appropriate proceedings.

The order is annulled and petitioners are discharged.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Carter, J., concurred.